No. 1392.

THE STATE OF LOUISIANA VS. THOMAS P. McCRYSTOL.

1. The terms "grand or petit juror" employed in Act 59 of 1878, embrace *tales* jurors lawfully selected and summoned, as well as regular jurors.

2. The rule that penal statutes are to be strictly construed is not to be applied with such unreasonable technicality as to defeat the purpose of all rules of statutory constructions, which purpose is to ascertain and enforce the true meaning and intent of the statute.

3. Act 59 of 1878 is not confined to bribing or attempting to bribe jurors actually impanelled and sworn to try a particular case, but applies to all jurors who have been lawfully selected and summoned to act as such.

4. An information charging an attempt to bribe a juror, in the language of the statute, specifying the particular juror, and the nature of the bribe offered, and setting forth the unlawful intent, conforms to all requirements of criminal pleading.

APPEAL from the Criminal District Court for the Parish of Orleans. Marr, J.

W. H. Rogers, Attorney General; C. H. Luzenberg, District Attorney; John J. Finney, Assistant District Attorney; W. L. Evans and Chas J. Theard for the State, Appellee:

A tales juror is a petit juror, and is covered by the provisions of Act No. 59 of 1878, Act 59 of 1878; 38 An. 481; Act No. 98 of 1880, Section 5; Act No. 138 of 1877, Ex-Session; Act No. 54 of 1888, Section 3; 6 Wallace, 395; 108 Massachusetts Reports, page 21. Segwick on Statutory and Constitutional Law, second edition, pages 262, 287 and 289. 41 An. 338.

Act No. 59 of 1878 does not apply merely to jurors actually impanelled and sworn to try a particular case, but to all jurors liable to jury service, from the moment their names have been drawn from the jury wheel. This is particularly true of the tales juror, drawn to serve in a specially designated cause.

It is not sufficient ground for rejecting a juror of the regular panel, when tendered that his name has been written Bowan instead of Bowen. This is idem sonans.

The only opinion which will disqualify a juror is a fixed, deliberate opinion, which will not yield to evidence. 32 An. 1241; 33 An. 889; 35 An. 317; 38 An. 792; 40 An. 741; 41 An. 1083.

Moreover, it must appear that the accused was compelled to exhaust his peremptory challenges; otherwise he can not complain even of an erroneous decision by the judge. 14 An. 461; 35 An. 315; 40 An. 741.

The jury are the sole judges of the evidence, and of its effect. The refusal of the lower court to grant a new trial, where the grounds of the application refer to questions of fact only, and to the effect of the testimony, will not be reviewed on appeal. 11 An. 478; 33 An. 679.

Where the court has given a written charge, containing all that could possibly be stated with regard to a particular question, its refusal to give an additional and special charge as to the same matter, is perfectly proper, especially when the requested charge is so worded that it might perhaps mislead the jury. 33 An. 682; 12 An. 195, 197.

A. D. Henriques for Defendant and Appellant:

It is a general rule, that the special matter of the whole offence should be set forth in the indictment, or information, with such certainty that the offence may

State vs. McCrystol.

judicially appear to the court. When special facts are an essential part of the offence, they must be set out. Wharton's Pleadings and Practice, Sec. 151; United States vs. Crinkshank, 92 U. L. 542; United States vs. Simmons, 96 U. S. 360; Com. vs. Perry, 114 Mass. 263; State vs. Stiles, 40 Iowa, 148; State vs. Murray, 41 Iowa, 580.

The indictment " ought to contain a complete description of such facts and circumstances as constitute the crime without inconsistency or repugnancy." In other words, it should distinctly specify *everything which enters into the offence*, but not necessarily more. Bishop Crim. Pro., Sec. 509 and Sec. 519.

Indictments or information on a statute, it is requisite to follow not only the special rules which govern it, but those also which govern other indictments. The information must fully state the offence; and if this can not be done in the mere statutory words, it must be expanded beyond them. Wharton's Pleadings and Practice, Sec. 220; State vs. Stiles, 3 An. 324; State vs. Read, 6 An. 227; State vs. Delerno, 11 An. 648.

An indictment under a statute ought with certainty and precision to charge the defendant with having committed the acts under the circumstances mentioned in the statute. State vs Stiles, 5 An. 324; State vs. Shepperd, 33 An. 1216; State vs. Harlis, 33 An. 1172; State vs. Gus. Johnson, 42 An. 560; State vs. Read, 6 An. 227; State vs. Palmer, 32 An. 571.

Where the legislative meaning is plain, there is not only no occasion for rules to aid the interpretation, but it is contrary to the rules to employ them. In construing penal statutes, courts can not take into view the motives of the law given further than they are expressed in the statute, and the equity of a criminal statute will not be considered when its terms are positive and free from doubt. Bishop Stat., Crimes, Sec. 72, Sec. 193 and Sec. 194, and note 8 to Par. 193; State vs. King, 12 An. 593; State vs. Smith, 30 An. 849; State vs Palmer, 32 An. 571; State vs. Peters, 37 An. 732; State vs. Backarow, 38 An. 319.

Section 3 of Act 59, approved March 7, 1878, claimed to have been violated, expressly sets forth the persons, and class of persons upon whom an attempt or offer to bribe can be made, and among those named are grand or petit jurors; and has plainly and in terms of no doubtful import declared that tales jurors are within its provisions, and the terms of the statute being plain and unambiguous, the equity of the statute will not be considered. State vs. Kirby, 41 An. 298; Bishop Stat., Crimes, Sec. 72, Sec. 193 and Sec. 194.

By express statute of this State, the manner of drawing, selecting and impanelling grand, petit and tales jurors for the parish of Orleans, is provided by Act 98 of 1880, p. 124, and Act 188, Extra Session, of 1877, p. 209.

Talesmen are not regular jurors. State vs. Smith, 26 An. 63. Talesmen are legal substitutes for the regular venire. State vs. Creach, 38 An. 480.

Our system of laws does not contemplate the use of talesmen in the trial of criminal causes until the regular venire is exhausted. State vs. James Atkinson, 29 An. 543; State vs. Thomas Ross, 30 An. 1154; State vs Wyatt Creach, 38 An. 480.

The common law method to remedy a default of jurors summoned, was to select *tales de circumstantibus* (such of the bystanders as were competent), but in Louisiana express provision is made therefor by statute. Act of 1877, Extra Session, p. 209.

The credit of a witness may be impeached by proof that he has made statements out of court contradictory to what he has testified to on the trial in matters relevant to the issue. 1st Greenleaf, Sec. 462; Wharton Crim. Ev., Sec. 483; State vs. Colbert, 29 An. 715; State vs. Angelo, 32 An. 407.

The opinion of the court was delivered by

FENNER, J. The defendant was tried and convicted under an information charging him with the offence of " offering and attempting to bribe " a certain *tales* juror drawn and summoned to serve in the cause of the State vs. Natalie et al., better known as the Hennessey murder case. The offence is statutory, and is defined and punished by Act 59 of 1878.

The second section of that Act denounces the offence of *actually* bribing any of the officers enumerated therein, including any " *grand or petit juror*," and it defines the offence as follows: to " directly or indirectly give any sum or sums of money, or any other bribe, present or reward, or any other thing to any  *  *  *  *grand or petit juror*  *  *  *  with intent to induce or influence him  *  *  *  to execute any of the powers in him vested, or perform any duty of him required, with partiality or favor, or otherwise than is required by law," etc.

The third section of the Act proceeds to define and punish the offence of *attempting or offering* to bribe, and provides as follows:

" That every person who shall offer or attempt to bribe any  *  *  *  grand or petit juror  *  *  *  in any of the cases mentioned in the preceding sections of this Act  *  *  *  shall, on conviction, be fined in a sum not exceeding one thousand dollars, and suffer imprisonment in the penitentiary for a period not exceeding one year, and shall forever be disqualified from holding any office of honor, trust or profit in this State."

The information under which defendant was prosecuted, charges the offence in the following terms, viz.: that defendant " unlawfully, corruptly and feloniously did offer and attempt to bribe one Thomas J. McCabe, he the said Thomas J. McCabe then and there being regularly drawn and summoned to appear and serve as a tales juror in the cause of the State of Louisiana versus Peter Natali and others, then pending and on trial in Section B of the Criminal District Court for the parish of Orleans aforesaid, and numbered 14,414 of the docket of the said criminal district court, in the manner following, to-wit: that he, the said Thomas P. McCrystol, then and there, well knowing the premises, did unlawfully, corruptly and feloniously offer and promise to give and pay to him, the said Thomas J. McCabe, a large sum of money, to-wit, the sum of five hundred dollars,

with the felonious intent, unlawfully, corruptly and feloniously to induce and influence him, the said Thomas J. McCabe, tales juror as aforesaid, to perform the duty of him required by law, as a juror in said cause, with partiality and· favor toward the defendants in said cause, and otherwise than is required by law."

Upon demurrer and on motion in arrest, the defendant assails the sufficiency of the information upon grounds which may be summarized as follows:

1. That the information does not charge the defendant with any crime denounced by law, because the statute only punishes the offence of bribing or attempting to bribe *grand or petit jurors*, and does not embrace *tales jurors*

2. That the information does not state [that the defendant was ever impanelled or sworn as a juror to try the cause of State vs. Natali, and that, therefore, he was not charged with any duty in the premises which he could perform " with partiality, or favor, or otherwise than is required by law."

3. That the information does not set forth any fact or statement of facts with such certainty as to apprise defendant of the nature and cause of the accusation which he is called upon to answer. ·

## I.

We have given close attention to the able and learned oral and written arguments advanced by the counsel of defendant in support of the proposition that *tales* jurors are not embraced within the terms " grand or petit juror " employed in the statute.

We admit the cardinal rule that penal statutes are to be strictly construed, and are not to be extended to cases not included within the clear and obvious import of their language; but this rule is not to be applied with such unreasonable and technical strictness as to defeat the very purpose of all rules of construction, which is to ascertain the true meaning and intent of the statute. We are not to invent doubts or magnify quibbles, but are diligently to seek the legislative intent, as expressed in the words of the statute, aided by all other rules of interpretation, and when satisfied beyond all reasonable doubt of what that intent really is, it is our duty to apply and enforce it.

In the language of the Supreme Court of the United States: " We are not unmindful that penal laws are to be construed strictly. It is

said that this rule is almost as old as construction itself. But whenever invoked it comes attended with qualifications and other rules no less important. It is by the light which each contributes that the judgment of the court is to be made up. The object in construing penal, as well as other statutes, is to ascertain the legislative intent. That constitutes the law. · If the language be clear, it is conclusive. There can be no construction where there is nothing to construe. The words must not be narrowed to the exclusion of what the Legislature intended to embrace; but that intention must be gathered from the words, and they must be such as to leave no room for a reasonable doubt upon the subject. It must not be defeated by a forced and over-strict construction. The rule does not exclude the application of common sense to the terms made use of in the act, in order to avoid an absurdity, which the Legislature ought not to be presumed to have intended. When the words are general, and include various classes of persons, there is no authority which would justify a court in restricting them to one class and excluding others, where the purpose of the statute is alike applicable to all.. The proper course in all cases is to adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and objects of the Legislature." Hartwell's Case, 6 Wall. 395; see to same effect: Com. vs. Inter. Liquors, 108 Mass. 21; Sedgwick's Stat. and Const. Law, pp. 282–289.

Nothing could be clearer to our minds than that the terms "grand or petit juror" employed in the statute, embraces, and were intended to embrace, *tales* jurors as well as regular jurors.

The law under which *tales* jurors are provided in the parish of Orleans, is Act 138, of 1877, E. S., which provides "that whenever on the trial of any criminal case in the parish of Orleans, where the accused is charged with a felonious crime, the regular panel of jurors for the term has been exhausted and the jury in the case on trial is not complete, or when, in the opinion of the judge, in the case fixed for trial talesmen are or will be required to complete the jury, the judge shall enter an order on the minutes directing the criminal sheriff, or one of his deputies, to draw such number of tales jurors as in the opinion of the court may be necessary to complete the jury, from the jury wheel containing the jurymen drawn by the jury commissioners, and hereafter no tales jurymen shall be drawn from the bystanders in cases where the accused is charged with a felony."

It is impossible to make any distinction, in the nature of their functions, between *tales* jurors thus drawn and the jurors of the regular panel. Both are jurors drawn and summoned for the sole purpose of forming a petit jury and serving as petit jurors.

In the narrowest and most literal definition of the word *juror*, it means " a man who is sworn or affirmed to serve on a jury." Bouvier, L. D., *verbo*, Juror.

In this sense, no one would be either a grand or petit juror until he was actually impanelled and sworn.

But all the statutes of the State and law writers universally apply the term *juror* to persons selected and summoned according to law for the purpose of serving as grand or petit jurors, whether they have been actually impanelled and sworn or not.

Therefore, all persons who are lawfully selected and summoned to serve as jurors are, in legal terminology, called jurors, and they are called grand or petit jurors according to the function they are intended to perform. In the case of the regular venire, after the grand jury has been selected, the remaining members are petit jurors, because they are held for the purpose of forming petit juries; and all tales jurors are petit jurors, because they are for no other purpose than to serve on a petit jury.

There is a distinction between *regular* jurors and *tales* jurors; but both *regular* and *tales* jurors are, in the sense of the law, *petit jurors* when they are selected and summoned to serve on a petit jury. When such a jury is formed it is none the less a petit jury, because it is composed of tales jurors, nor are the latter any less petit jurors because they were summoned as talesmen.

The purpose of the statute is equally applicable to *tales* or regular jurors, and it would attribute fatuity to the Legislature to suppose that it would punish the bribery of one class and not of the other. We are perfectly satisfied that the terms "grand or petit juror" embrace all persons lawfully selected and summoned to serve on grand or petit juries, and hence that defendant's case is covered by the indictment.

## II.

What we have said above goes far toward disposing of the second objection; for we hold that the statute applies to jurors who have been selected and summoned, whether or not they have been impanelled and sworn. When thus summoned, the juror was fully charged

with the-duty of performing all the functions of a juror which he might be called on to perform, and to discharge those functions without partiality or favor in the manner required by law. The offence of bribing, or attempting to bribe, him, "with the intent to induce or influence" him to violate that duty, is the offence denounced by the statute, and is not the less committed because the accidents of the trial prevented him from actually serving on the jury in the case. A contrary construction would rob the statute of practical effect, because the opportunity to bribe is lost, or greatly limited, after the juror is impanelled, and subjected to the seclusion attending juries in capital cases.

The briber must get in his work while the jurors selected are accessible, and before they have been impanelled.

The case is governed by like considerations with those approved by us in the case of State vs. Tisdale, 41 An. 338.

### III.

The information sets forth the offence in the substantial words of the statute. It specifies the nature of the offer to bribe a named juror by promising to give him the sum of $500, and the object, viz.: to induce him to favor the defendant in the particular cause in which he was summoned, by performing his functions as a juror with favor and partiality towards him.

We fail to see any lack of certainty in the charge, or any failure to apprise defendant fully of the nature and scope of the accusation he had to meet.

Other points presented in the record have been waived.

Judgment affirmed.

1. The terms "grand or petit juror" employed in Act 59 of 1878 embraces *tales* jurors, lawfully selected and summoned, as well as regular jurors.

2. The rule that penal statutes are to be strictly construed is not to be applied with such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and. enforce the true meaning and intent of the statute.